UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                Case No. 13-58567

KELLY JAMES KIZER,                                    Chapter 7

                Debtor.                        Judge Thomas J. Tucker
_____/

**OPINION REGARDING THE PENDING OBJECTIONS
TO THE DEBTOR'S AMENDED CLAIM OF EXEMPTIONS**

In *Clark v. Rameker*, __ U.S. __, 134 S.Ct. 2242 (2014), the United States Supreme Court held that a bankruptcy debtor's interest in an inherited individual retirement account ("IRA") does not qualify as "retirement funds," under the exemption provisions of 11 U.S.C. § 522(b)(3)(C). In this case, the Court must decide whether a bankruptcy debtor's interest in accounts he received as an "alternate payee," as a result of the division of his ex-wife's retirement accounts in his divorce, can be claimed exempt as "retirement funds" under 11 U.S.C. § 522(d)(12). The Court concludes that the answer is "no." This situation is enough like that in *Clark v. Rameker* to compel the same result.

This case is before the Court on the objections to the Debtor's amended claim of certain exemptions, filed by the creditor Hubbard Snitchler & Parzianello PLC ("Creditor") and by the Chapter 7 Trustee (Docket ## 28, 37, the "Exemption Objections"). The Court held two hearings on the Exemption Objections, and previously entered two orders that partially resolved those objections. (*See* Order filed at Docket # 58 at ¶¶ 6, 7; and Order filed at Docket # 77 at ¶¶ 1, 2). This opinion addresses the unresolved issues.

**I. Jurisdiction**

This Court has subject matter jurisdiction over this bankruptcy case and this contested

matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This contested matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(B), and 157(b)(2)(O). This matter also is "core" because this matter is "created or determined by a statutory provision of title 11," namely, 11 U.S.C. § 522(d)(12). *See generally Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009).

**II. Background**

The key unresolved issue before the Court is whether the Debtor's interests in two specific accounts qualify for exemption as "retirement funds" under 11 U.S.C. § 522(d)(12). In a previous order, the Court listed the accounts at issue, and one other account that is no longer at issue, in framing the dispute as follows:

> The Debtor's property listed in the Debtor's most recent amended Schedules B and C (Docket # 25) as:
>
> > U of M retirement account - 57,457.00
> > TIAA-CREFF retirement account - 40,000.00
> > U of M 403(b) - 9,300.00
>
> including Debtor's right to receive the $40,000.00 sum listed above by a transfer into a TIAA-CREFF retirement account in Debtor's name (to the extent such transfer had not yet occurred as of the petition date), all is property of the bankruptcy estate, notwithstanding 11 U.S.C. § 541(c)(2) and *Patterson v. Shumate*, 504 U.S. 753 (1992) and its progeny. The issue in dispute among the parties therefore is limited to whether and to what extent this property is exempt under 11 U.S.C. § 522(d).

(Order filed June 19, 2014 (Docket # 58) at ¶ 7 (footnote omitted)).[1]

---

[1] In the footnote omitted from the above quotation, the Court noted that its conclusion that these accounts are property of the bankruptcy estate "is based on Debtor's concession that this is so. As the Court found during the June 18, 2014 hearing, such concession was made implicitly, by Debtor having claimed all of this property as exempt under provisions of § 522(d), in Debtor's most recent amended Schedule C (Docket # 25). And such concession was made explicitly, by Debtor's counsel during the

2

Of the three accounts listed in the above quotation, only the first two remain at issue. In a later order, the Court allowed the Debtor's claimed exemption, under 11 U.S.C. § 522(d)(5), in the full $9,300.00 amount of the account described as "U of M 403(b) - 9,300.00." (Order filed September 3, 2014 (Docket # 77) at ¶ 1.)

The remaining dispute concerns the two accounts described in Debtor's latest amended schedules B and C as:

> U of M retirement account - 57,457.00
>
> TIAA-CREFF retirement account - 40,000.00

Debtor's latest amended Schedule C claims an exemption for the full amounts listed for these accounts, under 11 U.S.C. § 522(d)(12). The Trustee and the Creditor object to this, and argue that the § 522(d)(12) exemption does not apply to either account. They rely primarily on the United States Supreme Court's decision in *Clark v. Rameker*, __ U.S. __, 134 S.Ct. 2242 (2014), discussed below.

## III. Discussion

### A. Some general principles about exemptions

The Trustee and the Creditor bear the burden of proving that the Debtor's claimed exemptions under § 522(d)(12) "are not properly claimed." *See* Fed.R.Bankr.P. 4003(c); *see also In re Demeter*, 478 B.R. 281, 286 (Bankr. E.D. Mich. 2012); *In re John*, 459 B.R. 684, 689 (Bankr. E.D. Mich. 2011). And the Court must construe exemptions liberally, in favor of the Debtor. *See Demeter*, 478 B.R. at 286; *In re Hanh Hieu Dang*, No. 11-10091, 2012 WL

---

June 18, 2014 hearing." Order (Docket # 58) at 3 n.1. *See also* Tr. of June 18, 2014 hearing (Docket # 61) at 110, 119-20.

2175778, at *2 (Bankr. W.D. Mich. June 13, 2012)("Exemptions are to be liberally construed in favor of a debtor.")(citing *Menninger v. Schramm* (*In re Schramm*), 431 B.R. 397, 400 (B.A.P. 6th Cir. 2010) and Fed.R.Bankr.P. 4003(c)).

The Court must determine Debtor's claimed exemptions as of the date he filed his bankruptcy petition. *See Lawless v. Newton* (*In re Lawless*), 591 F. App'x 415, 417 (6th Cir. 2014); *Demeter*, 281 B.R. at 286; *Hanh Hieu Dang,* 2012 WL 2175778, at *2 ("Exemptions are determined as of the filing date."); *In re Buick*, 237 B.R. 607, 609 (Bankr. W.D. Pa. 1999) and cases cited therein (holding that a debtor's entitlement to an exemption under § 522(d)(1) is "determined as of the filing date of . . . [a bankruptcy] petition").

**B. The "retirement funds" issue under § 522(d)(12)**

Section 522(d)(12) is the exemption for "retirement funds" that is available to debtors electing the federal exemptions, and its wording is identical to the wording of § 522(b)(3)(C), applicable to debtors electing state-law exemptions. Section 522(d)(12) allows an exemption in "[r]etirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986."

In *Clark v. Rameker*, the Supreme Court considered whether a Chapter 7 debtor could claim an exemption under 11 U.S.C. § 522(b)(3)(C) in funds held in an IRA that she had inherited upon her mother's death. In *Clark*, the question was whether funds held in an inherited IRA qualify as "retirement funds" within the meaning of 11 U.S.C. § 522(b)(3)(C). The Supreme Court held:

Section 522(b)(3)(C)'s reference to "retirement funds" is . . .

> properly understood to mean sums of money set aside for the day an individual stops working.
>
> [W]hether a given set of funds falls within this definition, the inquiry must be an objective one, not one that 'turns on the debtor's subjective purpose.' . . . In other words, to determine whether funds in an account qualify as 'retirement funds,' courts should not engage in a case-by-case, fact-intensive examination into whether the debtor actually planned to use the funds for retirement purposes as opposed to current consumption. Instead, we look to the legal characteristics of the account in which the funds are held, asking whether, as an objective matter, the account is one set aside for the day when an individual stops working.

*Clark*, 134 S.Ct. at 2246.

The Court then focused on how the characteristics of a traditional or Roth IRA change under the Internal Revenue Code upon inheritance after the death of the owner. The Court noted that:

> First, the holder of an inherited IRA may never invest additional money in the account. . . . Inherited IRAs are thus unlike traditional and Roth IRAs, both of which are quintessential 'retirement funds.' For where inherited IRAs categorically prohibit contributions, the entire purpose of traditional and Roth IRAs is to provide tax incentives for accountholders to contribute regularly and over time to their retirement savings.
>
> Second, holders of inherited IRAs are required to withdraw money from such accounts, no matter how many years they be from retirement. Under the Tax Code, the beneficiary of an inherited IRA must either withdraw all of the funds in the IRA within five years after the year of the owner's death or take minimum annual distributions every year. . . .
>
> Finally, the holder of an inherited IRA may withdraw the entire balance of the account at any time—for any purpose—without penalty. Whereas a withdrawal from a traditional or Roth IRA prior to the age of 59 ½ triggers a 10 percent tax penalty subject to narrow exceptions, . . . a rule that

> encourages individuals to leave such funds untouched until retirement age—there is no similar limit on the holder of an inherited IRA.

*Id*. at 2247-48 (internal citations omitted).

Based on these three legal characteristics of inherited IRAs, the Supreme Court concluded "[f]unds held in inherited IRAs . . . constitute 'a pot of money that can be freely used for current consumption,' . . . not funds objectively set aside for one's retirement." *Id*. at 2248. (citation omitted). As a result, the Court held that "funds held in inherited IRAs are not 'retirement funds' within the meaning of § 522(b)(3)(C)'s bankruptcy exemption." *Id*. at 2246.

The Trustee and the Creditor argue that *Clark* is analogous to this case. Here the Debtor has claimed an exemption under the "retirement funds" exemption of 11 U.S.C. § 522(d)(12), of his interest in funds held in a § 401(a) account and of his interest in his ex-wife's "TIAA CREFF retirement account."

### C. Facts regarding the alleged "retirement funds" at issue

#### 1. The pre-petition Consent Judgment of Divorce

The Debtor filed this bankruptcy case on October 8, 2013. Several months earlier, the Debtor and his wife, Jacqueline Kizer, were divorced. As part of a June 19, 2013 Consent Judgment of Divorce, the Debtor was awarded a 50% interest in three "retirement accounts" owned by Ms. Kizer. In addition, the marital home was awarded to Ms. Kizer, with the Debtor to receive his share of the equity in the home, determined by agreement of the parties to be $44,000.00. (Ex. B, Docket # 67-3 at 5-6). Because Ms. Kizer did not have any available liquid assets, she agreed to use her retirement accounts to pay Mr. Kizer for his interest in the marital home.

According to the Consent Judgment, Ms. Kizer's following three retirement accounts were to be divided between the parties:

(1) Fidelity 401(a) Base Plan;

(2) Fidelity 403(b) Base Plan; and

(3) TIAA-CREF Account.

(Ex. B, Docket # 67-3 at 5).

According to an email dated August 11, 2013 from Mary V. Ade, Director of Stout Risius Ross, Inc., (Ex. A, Docket #67-2) the value of the retirement accounts, and the amount of each of the accounts to be assigned to the Debtor, were as follows:

| | | |
|---|---|---|
| (1) | Value of 401(a) | $ 66,490.00 |
| (2) | Value of 403(b) | $ 27,734.00 |
| (3) | Value of TIAA-CREF | $ 40,009.00 |
| | Total value of accounts | $134,233.00 |
| | 50% to Kelly Kizer | $ 67,116.00 |
| | plus $37,000[2] to Kelly Kizer for equity in the marital home, "[g]rossed up by 20%" | 46,250.00 |
| | Total amount assigned to Kelly Kizer: | $113,366.00 |

**2. The pre-petition QDROs for the two accounts at issue**

**a. The 401(a) account**

Before the Debtor filed this bankruptcy case, the state court entered a "Qualified

---

[2] This $37,000 amount appears to have modified, apparently by agreement of the parties, the $44,000 amount stated in the earlier Consent Judgment of Divorce, described above.

7

Domestic Relations Order" ("QDRO") for each of the retirement accounts, on August 26, 2013.

For the Fidelity 401(a) plan, the QDRO (Ex. C, Docket # 67-4, at 1-5) referred to Internal Revenue Code ("IRC") §§ 401(a)(13) and 414(p) and Section § 206(d)(3)(E) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). The retirement benefit plan subject to this QDRO was stated as the "University of Michigan 401(a) Retirement Plan." (*Id.* at 2 ¶ 1).

Under the 401(a) plan QDRO, the Debtor was labeled an "alternate payee." He was awarded 100% of the account balance as of June 19, 2013. (*Id.* at 2 ¶ 5). As alternate payee, the Debtor's interest in the 401(a) plan was to be payable to him in a lump sum distribution once the plan administrator determined that the QDRO actually qualified as a QDRO. (*Id.* at 2 ¶ 8). As the alternate payee, the Debtor was required to "include in gross income, for the tax year of receipt, all retirement benefits pursuant to the Participant's assignment of benefits[.]" (*Id.* at 3 ¶ 10). The Debtor was to be "treated as the sole distributee under IRC Sections 72 and 402 of any payment or distribution that is made to the Alternate Payee pursuant to the Participant's assignment of benefits[.]" (*Id.* at 3 ¶ 10). In addition, "the Participant's basis in the Plan, if any, will be shared proportionately by the Participant and the Alternate Payee as provided in IRC Section 72(m)(10)." (*Id.*).

A "Certification" (actually, an affidavit), signed by Steve Sindlinger, the "Assistant Director of the University of Michigan Benefits Office," states that the Debtor **["]as an alternate payee was not eligible to make contributions into the Fidelity accounts held by Jacqueline Kizer."** (Ex. C, Doc. # 76)(emphasis added).

b. **The TIAA-CREF account**

The TIAA-CREF Account is part of the Teachers Insurance and Annuity Association - College Retirement Equities Fund. The account is comprised of annuity contracts. For the TIAA-CREF account, the QDRO (Ex. C, Docket # 67-4, at 11-16), also referred to IRC §§ 401(a)(13) and 414(p) and § 206(d)(3)(E) of ERISA. (*Id*. at 12 ¶ 1).

Under the TIAA-CREF QDRO, the Debtor was labeled as an "alternate payee." (*Id*. at 12 ¶ 3). The Debtor was awarded:

> the current values of the Participant's TIAA-CREF annuity accumulations for the Marital Portion, defined as the portion accrued as of May 30, 2013 . . . , as [his] sole and exclusive property to be applied to TIAA-CREF annuities subject to the terms and limitations of said annuities . . . [and] 100% of the Participant's annuities, valued as of the date the transfer is recorded by TIAA-CREF.

(*Id*. at 12 ¶ 6). The TIAA-CREF QDRO lists several conditions for the division of the annuity contracts held in the TIAA-CREF plan, including:

> b. All ownership rights in the newly issued annuities will belong to the Alternative Payee.
> . . . .
>
> d. The Alternate Payee's annuities will be issued with the same investment allocation as the Participant's applied pro rata. The Alternate Payee may change the investment allocation once his or her annuities are issued in accordance with the contributing employer's plan.

(*Id*. at 13 ¶ 7). The TIAA-CREF QDRO also states that:

> TIAA Traditional Retirement Annuities (RAs) do not allow single-sum withdrawals or transfers to alternate carriers. For other TIAA-CREF annuities, the Alternate Payee's right to receive single-sum withdrawals and/or transfer of all or a part of the accumulation to an alternate carrier may be limited in accordance with the contributing employer's plan.

9

(*Id*. at 13 ¶ 9).

Like the 401(a) QDRO, the Debtor, as alternate payee under the TIAA-CREF QDRO, was required to "include in gross income, for the tax year of receipt, all retirement benefits pursuant to the Participant's assignment of benefits[.]" (*Id*. at 13 ¶ 12). The alternate payee is to be "treated as the sole distributee under IRC Sections 72 and 402 of any payment or distribution that is made to the Alternate Payee pursuant to the Participant's assignment of benefits[.]" (*Id*.). In addition, "the Participant's basis in the Plan, if any, will be shared proportionately by the Participant and the Alternate Payee as provided in IRC Section 72(m)(10)." (Id. at 14 ¶ 12).

### 3. The status of the two accounts at issue

#### a. The 401(a) account

A "Retirement Savings Statement" from Fidelity Investments for the period October 3, 2013 to November 4, 2013 provides details about the alternate payee account that was established in the Debtor's name. (Ex. D, Docket # 67-5). The assets in this account were from the division of Ms. Kizer's U of M 401(a) account and U of M 403(b) account. The balance as of November 4, 2013 of the U of M 401(a) account is listed as $57,463.25.

A later "Retirement Savings Statement" from Fidelity Investments, for the Debtor's account, then labeled as the "401(A) Base Plan," for the period January 1, 2014 - June 30, 2014, indicates that the Debtor made a total withdrawal from the account of $58,000.00 on February 27, 2014. (Ex. G, Docket # 67-8 at 2-8). The $58,000.00 is comprised of two withdrawals: one for $34,153.40 and another for $23,846.60. The $58,000.00 withdrawal left a balance in the account as of June 30, 2014 of $815.64.

There is no evidence in the record that the Debtor incurred or paid a 10% tax penalty, or

any tax penalty, when he made these withdrawals from his alternate payee 401(a) account in February 2014. And while there is evidence that Fidelity Investments withheld for ordinary income taxes, there is no evidence of any withholding for any tax penalty.

At oral argument, counsel for the Debtor asserted, without citing to any evidence in the record, that the Debtor paid a 10% tax penalty on the above withdrawal from his 401(a) account. The discussion at oral argument was this:

> THE COURT: . . . So then the third factor whether he can -- he was able to withdraw the entire balance in the account at any time without any 10% penalty.
>
> MR. NORTON: I -- I don't have the distribution letters with me today. If this were an evidentiary hearing, he would testify right now that he did in fact pay a penalty. It was part of the 25% that was withheld.
>
> THE COURT: Withheld by who?
>
> MR. NORTON: The trust to go towards taxes. Presumably the trustee, the trust administrator.
>
> THE COURT: Fidelity?
>
> MR. NORTON: Yes.
>
> THE COURT: And what's the evidence for that proposition?
>
> MR. NORTON: I would unfortunately –
>
> THE COURT: The debtor - you said the debtor would testify to that. Where does he get that knowledge, from some document?
>
> MR. NORTON: Yes.
>
> THE COURT: What document? Is the document in the record? What document?
>
> MR. NORTON: It is not in the record, Judge. It is actually we're

11

back to his brother who is a CPA and helps him with these things.

THE COURT: So what document is it? Describe it.

MR. NORTON: I don't - I haven't seen it. We just brought it up as we were sitting here as a matter of fact.

THE COURT: This is some document regarding the amount withheld by Fidelity before it transferred the money into his alternate payee account?

MR. NORTON: Yes.

THE COURT: And do you think there is a - there was a 10% penalty withheld from that amount before it was transferred?

MR. NORTON: That is what the debtor tells me.

THE COURT: And so by the time the debtor took the money out of this alternate payee account in January and February 2014, your view would be in taking money out of the account at that point, he wouldn't be subject to any 10% penalty for that because he had already paid it.

MR. NORTON: Oh, no. I'm talking about when he when he took it out for his personal use.

THE COURT: Well, that -- that's what I'm - that's what I'm trying to understand. So in January and February once -- the money had been transferred into his own payee account at the outset, right?

MR. NORTON: Right, right, in whole.

THE COURT: Right. So then he -- then he took some money out of it.

MR. NORTON: Right.

THE COURT: You're saying there was -- there was a withholding of a 10% penalty from the withdrawals that he took?

MR. NORTON: Yes.

12

>
> THE COURT: And the evidence for that is some letter or letters from Fidelity?
>
> MR. NORTON: Apparently there is documentation. Whether it's a letter, or whether it's a distribution statement of some sort, I haven't seen it. I understand it exists.
>
> THE COURT: And -- and who has it?
>
> MR. NORTON: His brother, the CPA.
>
> THE COURT: So why didn't you -- why didn't you put that in the record?
>
> MR. NORTON: I didn't know about it until today, Judge.
>
> THE COURT: Was this done each time the debtor made a withdrawal, or how did it work?
>
> MR. NORTON: I don't know.
>
> THE COURT: You don't know. Do you want an opportunity to put this document in the record?
>
> MR. NORTON: Absolutely.
>
> THE COURT: How much time do you want to do that?
>
> MR. NORTON: A week. Could we have a week, Judge?
>
> THE COURT: Yes. September 10, 2014. Go on.

(Tr. of September 3, 2014 hearing (Docket # 84) at 60-63).

As a result of this discussion, the Court gave the Debtor an opportunity (and a 7-day deadline) to "file a supplement to Debtor's opposition to the Exemption Objections, containing one or more documents regarding the 10% tax penalty issue, as described by the Court during the September 3 hearing." (Order (Docket # 77) at ¶ 3). In response, the Debtor's counsel filed only a "Statement" saying the following, in its entirety:

13

> As the Court will recall, at the continued hearing on September 3, 2014 regarding the objections to Debtor's claim of exemptions, the Debtor informed coun[sel] that he paid the 10% early withdrawal penalty when he withdrew the retirement funds in question. The Court gave the Debtor one week to produce evidence that he paid the penalty. **The Debtor has failed to produce any such evidence.**

(Statement Regarding Early Withdrawal of Retirement Funds (Docket # 79)(emphasis added)).

From all of the foregoing, the Court finds and concludes that the Debtor did *not*, in fact, pay or incur a 10% tax penalty, or any tax penalty, when he withdrew almost all the money from his alternate payee 401(a) account in February 2014.

### b. The TIAA-CREF account

A July 8, 2014 letter from a "QDRO Relationship Manager" at TIAA-CREF Financial Services, to the Debtor's former divorce counsel, explained that TIAA-CREF could not "implement" the QDRO previously received for the TIAA-CREF Account for multiple reasons, which were explained in a letter dated September 3, 2013 to the Debtor's former counsel. (Ex. E, Docket # 67-6 at 1-4). (A copy of that September 3, 2013 letter is also included in Exhibit E).

Another letter dated July 30, 2014, again from a QDRO Relationship Manager at TIAA-CREF Financial Services, states that once an acceptable qualified domestic relations order has been issued for Ms. Kizer's TIAA-CREF accounts, the Debtor "will then be awarded funds as an alternate payee. At that point, he will receive his own TIAA-CREF accounts **and will then be considered a terminated participant in the plan from which the award amounts came. As a terminated plan participant, [the Debtor] will not be eligible to make any further contributions to that plan** but he will be able to reallocate funds or 'actively manage' the accounts, just like the other plan participants." (Ex. A, Docket # 72-2 at 1-3 (emphasis added)).

14

As of the bankruptcy petition date, and also as of the hearing dates, no alternative payee account(s) had yet been established in the Debtor's name for the TIAA-CREF account.

### D. The Court's ruling: § 522(d)(12) does not apply to the accounts at issue

The parties have not cited any cases discussing whether the Supreme Court's reasoning and holding in *Clark* applies to alternate payee retirement accounts received by a debtor in a divorce. And the Court is not aware of any such cases.

The Court must consider the applicability, in this case, of the three factors cited by the Supreme Court in *Clark*, to support its holding that funds in an inherited IRA are not "retirement funds" under 11 U.S.C. § 522(b)(3)(C).

The first such *Clark* factor is whether the Debtor may invest additional money in the accounts he received (or is to receive) from his divorce — the 401(a) account and the TIAA-CREF account (sometimes referred to below as the "Debtor's alternate payee accounts"). The Court finds that, like the owner of the inherited IRA in *Clark*, the Debtor in this case "may never invest additional money in the account[s]." *See Clark*, 134 S.Ct. at 2247. The evidence of this in the record is undisputed, *see* discussion in Parts III.C.2.a (401(a) account) and III.C.3.b (TIAA-CREF account) of this opinion. The Debtor does not dispute this evidence, and the Debtor cites no evidence or legal authority to the contrary.

The second *Clark* factor is whether the Debtor is required to withdraw money from the accounts at issue at or by any particular time sooner than retirement age, or "no matter how many years [he] may be from retirement," like the owner of an inherited IRA is required to do. *See Clark*, 134 S.Ct. at 2247. The Trustee and the Creditor have failed to demonstrate, with any evidence or legal authority, that this is so for the Debtor's alternate payee accounts. Creditor's

15

13-58567-tjt    Doc 86    Filed 10/02/15    Entered 10/02/15 14:00:42    Page 15 of 18

counsel and the Trustee's counsel both conceded during oral argument that this second *Clark* factor is not present in this case. (Tr. of September 3, 2014 hearing (Docket # 84) at 14, 53). So this *Clark* factor is not present in this case.

The third *Clark* factor is whether the Debtor "may withdraw the entire balance of the account[s] at any time—for any purpose—without penalty," such as the 10% tax penalty that applies to "a withdrawal from a traditional or Roth IRA prior to the age of 59 ½ . . . subject to narrow exceptions." *Clark*, 134 S.Ct. at 2247. The Court finds that the Debtor *could* withdraw the entire balance of his alternate payee accounts "at any time — for any purpose— without penalty" as could the debtor with an inherited IRA in *Clark*. *See* 26 U.S.C. § 72(t)(2)(C). And as discussed in Part III.C.3.a of this opinion, the Debtor did in fact withdraw almost the entire balance of his alternate payee 401(a) account in February 2014, without paying any 10% tax penalty.

Thus, two of the three *Clark* factors — the first and the third factors — apply to the Debtor's alternate payee accounts at issue in this case. Nothing in the Supreme Court's opinion in *Clark* suggests that all three factors must be present before a court may conclude that a given account is not "retirement funds." And the Court concludes that the two factors that *are* present here should be given more weight that the absent (second) *Clark* factor. This is especially so with respect to the third factor, that the Debtor could withdraw and spend the entire balance of his alternate payee accounts at any time, without a 10% tax penalty or any other tax penalty. This factor especially, but also when combined with the first *Clark* factor, demonstrates that, like the funds at issue in *Clark*, the funds at issue in this case "constitute 'a pot of money that can be freely used for current consumption,' . . . not funds objectively set aside for one's retirement."

16

*Clark*, 134 S.Ct. at 2248 (citation omitted).

Thus, the funds at issue in this case cannot be considered "retirement funds" within the meaning of the § 522(d)(12) exemption.

**E. Other arguments, which the Court does not need to address**

The Court concludes that it is not necessary to address other arguments made by the parties. These include the following.

First, the Debtor's counsel has suggested that whether or not the § 522(d)(12) exemption applies to the Debtor's alternate payee accounts, those accounts can be exempted under § 522(d)(10)(E). The Court will not address such suggestion, however, because in his most recent amended Schedule C, the Debtor has not claimed any exemption under § 522(d)(10)(E).

Second, the Trustee and the Creditor argue that § 522(d)(12) does not apply to the Debtor's interest in the TIAA-CREF account at issue, because as of the petition date (and also as of the hearing dates), no alternative payee account(s) had yet been established in the Debtor's name by TIAA-CREF. This apparently was because the pre-petition QDRO that the state court issued was found to be deficient in certain ways by the TIAA-CREF administrator. In addition to their main argument, based on *Clark*, the Trustee and the Creditor argue that because of this, the Debtor's interest in his ex-wife's TIAA-CREF account could not be considered the Debtor's "retirement funds," but rather, at most, the Debtor's right to receive alleged "retirement funds," and that § 522(d)(12) does not apply to a mere right to receive retirement funds.

Because the Court is disallowing the Debtor's § 522(d)(12) exemption on other grounds, stated above, the Court need not address this argument.

Third and finally, the Trustee and the Creditor argue that even if the Debtor's alternate

17

13-58567-tjt    Doc 86    Filed 10/02/15    Entered 10/02/15 14:00:42    Page 17 of 18

payee accounts could otherwise be considered "retirement funds" under *Clark*, the portion of those funds that represent Ms. Kizer's payment to the Debtor for his share of the equity in the marital home should not be considered "retirement funds." Again, the Court's ruling today makes it unnecessary to reach the merits of this argument.

## IV. Conclusion

For the reasons stated in this opinion, the Court will enter an order sustaining the objections to exemption, and disallowing the Debtor's claimed exemptions under 11 U.S.C. § 522(d)(12).

**Signed on October 2, 2015**         **/s/ Thomas J. Tucker**
                                       **Thomas J. Tucker**
                                       **United States Bankruptcy Judge**